# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**STATE OF LOUISIANA, ET AL.**                                    **CIVIL ACTION**

**VERSUS**                                                        **NO. 21-572-JWD-RLB**

**i3 VERTICALS, INC., ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on July 5, 2022.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **STATE OF LOUISIANA, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-572-JWD-RLB** |
| **i3 VERTICALS, INC., ET AL.** | |

<u>**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**</u>

Before the Court is Plaintiffs'[1] Motion to Remand. (R. Doc. 19). The motion is opposed. (R. Doc. 26). Based on the applicable law and analysis which follows, the Motion to Remand should be **GRANTED**. Oral argument is not necessary, therefore, Defendants' motion (R. Doc. 25) requesting same is **DENIED.**

**I.    Background**

On June 2, 2021, Plaintiffs initiated this class action in the 19th Judicial District Court, East Baton Rouge Parish, Louisiana, naming as defendants, among others, i3 Verticals, Inc., i3-Verticals, LLC, i3-Software & Services, LLC ("i3 S&S"), 1120 South Pointe Properties, LLC ("1120 South Pointe"),[2] Gregory R. Teeters ("Teeters"), and Scott Carrington ("Carrington") (collectively, "Defendants"). (R. Doc. 1-1 at 1-23).

According to Plaintiffs' petitions, i3 Verticals, Inc. is a foreign corporation formed under the laws of the State of Delaware, with its principal place of business in Nashville, Tennessee. (R. Doc. 1-5 at 81). i3 Verticals, LLC is a foreign limited liability company organized under the

---

[1] The named Plaintiffs are State of Louisiana, by and through its Division of Administration, and the law enforcement districts ("LEDs") of the following parishes, by and through their duly elected sheriffs appearing as ex officio chief executive officers and in their official capacities as sheriff: East Baton Rouge, Claiborne, Rapides, East Feliciana, West Feliciana, Grant, Acadia, Tangipahoa, Franklin, and Ascension.

[2] Formerly known as Software and Services of Louisiana, L.L.C. ("Software and Services"). (R. Doc. 1-1 at 65-66).

laws of the State of Delaware, with its principal place of business in Nashville, Tennessee. (R. Doc. 1-5 at 81). i3 Verticals, LLC is a wholly owned subsidiary of i3 Verticals, Inc. (R. Doc. 1-5 at 82). Next, i3 S&S is a foreign limited liability company formed under the laws of the State of Delaware. (R. Doc. 1-1 at 66-68, 69-70; R. Doc. 1-5 at 81-82;). It is authorized and doing business in the State of Louisiana. (R. Doc. 1-1 at 66, 69-70; R. Doc. 1-5 at 82). According to Plaintiffs, i3 S&S is a wholly owned subsidiary of i3-Verticals Inc. (R. Doc. 1-5 at 82). 1120 South Properties is a limited liability company organized under the laws of the State of Louisiana, with is principal place of business located in Bossier Parish, Louisiana. (R. Doc. 1-1 at 65-66; R. Doc. 1-5 at 82). Teeters is at least one of the members/managers of 1120 South. Teeters's domicile and business location is in Bossier City, Louisiana. (R. Doc. 1-1 at 65; R. Doc. 1-5 at 82).

  Plaintiffs allege that between 2015 and 2020, Defendants sold to them defective software products and cybersecurity services (the "Products") that "delivered malicious malware," "exposed personally identifiable information ("PII") of thousands of Louisiana citizens, and substantially jeopardized the operational capability of Louisiana's first responders." (R. Doc. 1-1 at 4, 8; R. Doc. 1-5 at 80, 85). Plaintiffs allege "that prior to the end of 2018," Plaintiffs purchased the Products "almost exclusively" from 1120 South Pointe (formerly known as Software and Services of Louisiana), which was owned by Teeters. (R. Doc. 1-5 at 79). During this time, "[m]ost of the contracts under which the Products were purchased were negotiated and signed by" Teeters personally. (R. Doc. 1-5 at 79). Teeters then sold the assets of 1120 South Pointe to i3 S&S in 2018. (R. Doc. 1-5 at 79). Plaintiffs allege that i3 S&S and Carrington assumed 1120 South Pointe's "prior role as the provider" of the Products. (R. Doc. 1-5 at 79).

2

The "new agreements were negotiated and/or signed by" Carrington, personally. (R. Doc. 1-5 at 79).

According to Plaintiffs, Defendants—particularly, 1120 South Pointe, Teeters, i3 S&S, and Carrington—"knowingly and negligently failed to implement any basic cyber hygiene measures to protect itself and its customers' computer networks," using "pirated software products, failing to report serious security incidents to" Plaintiffs, and "installing malicious software onto a workstation that housed customer access credentials." (R. Doc. 1-5 at 80).

As a result of Defendants' malfeasance, Plaintiffs' computer networks were "irreparably contaminated and/or destroyed," "which posed and continues to pose an imminent threat to the security of Louisiana's information and technology infrastructure." (R. Doc. 1-5 at 87). Plaintiffs further allege that they have expended $15,000,000.00 to install new hardware and software, and they have expended more than $7,000,000.00 for network remediation. (R. Doc. 1-5 at 90). Plaintiffs assert claims of negligence, redhibition, fraud and detrimental reliance, custody and care, unjust enrichment, and violation of the Louisiana Unfair Trade Practice Act ("LUPA").

With respect to Plaintiffs' class action claims, Plaintiffs aver, in their Original Petition, that they "are willing to serve" as class representatives for "40 or more similarly situated Louisiana Law Enforcement Districts and duly elected sheriffs throughout the State of Louisiana" that have incurred remediation expenses and damages and "may incur notification expenses" because of Defendants' misconduct. (R. Doc. 1-1 at 20). The Original Petition lists ten law enforcement districts ("LEDs"), by and through which the sheriffs of same appear in their capacities as *ex officio* chief executive officer and in their official capacity as sheriff.

On October 4, 2021, Plaintiffs filed a First Amended Petition for Damages and Class Action Petition. (R. Doc. 1-5 at 75-103, "Amended Petition"). The Amended Petition identifies

3

ten LEDs, by and through which the sheriff is each appears as *ex officio* chief executive offer. Unlike the Original Petition, the Amended Petition separately identifies the sheriffs appearing in their capacities as duly elected sheriffs. For example, the Original Petition identifies the named Plaintiffs in the following manner:

1. East Baton Rouge Parish Law Enforcement District, by and through the duly elected East Baton Rouge Sheriff, Sid J. Gautreaux, III, appearing as its *ex officio* chief executive office and in his official capacity as Sheriff;
2. Claiborne Parish Law Enforcement District, by and through the duly elected Claiborne Parish Sheriff, Samuel A. Dowies, appearing as *ex officio* chief executive officer and in his official capacity as Sheriff.

(R. Doc. 1-1 at 1, 2). The Amended Petition, on the other hand, identifies the named Plaintiffs as follows:

1. Sid J. Gautreaux, III, in his official capacity as Sheriff of East Baton Rouge
2. East Baton Rouge Parish Law Enforcement District, by and through the duly elected East Baton Rouge Sheriff, Sid J. Gautreaux, III, appearing as its *ex officio* chief executive office and in his official capacity as Sheriff;
3. Samuel A. Dowies, in his official capacity as Sheriff of Claiborne Parish;
4. Claiborne Parish Law Enforcement District, by and through the duly elected Claiborne Parish Sheriff, Samuel A. Dowies, appearing as *ex officio* chief executive officer and in his official capacity as Sheriff.

(R. Doc. 1-5 at 75, 76). The Amended Petition further provides that the "foregoing sheriffs and [LEDs] appear herein individually and as 'Class Representatives' of 80 or more similarly situated duly elected sheriffs and [LEDs] throughout the State of Louisiana." (R. Doc. 1-5 at 76-77). The Class Action section provides that the "class members are numerous, numbering in excess of 100 sheriffs and [LEDs] in the State of Louisiana." (R. Doc. 1-5 at 98).

On October 7, 2021, Defendants removed this action, alleging that the Court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). (R. Doc. 1).

4

On November 5, 2021, Plaintiffs filed the instant Motion for Remand, arguing that (1) Defendants untimely removed the action, (2) Plaintiffs satisfy the requirements of the local controversy and home state abstentions to CAFA jurisdiction, and (3) federal jurisdiction over Plaintiffs is constitutionally prohibited by the Eleventh Amendment. (R. Doc. 19-1 at 3).

## II.  Arguments of the Parties

In their Notice of Removal, Defendants assert that removal is timely because the matter was removed within 30 days of receipt of Plaintiffs' First Amended Petition on October 4, 2021, which is the first pleading from which it was ascertainable that the jurisdictional requirements of CAFA were met. (R. Doc. 1 at 7). According to Defendants, the Original Petition alleged only a class of 65 members, which is below the jurisdictional threshold for CAFA.[3] (R. Doc. 1 at 7). Plaintiffs' First Amended Petition, conversely, specifically alleges that the number of class members is in "excess of 100 sheriffs and [LEDs] in the State of Louisiana." (R. Doc. 1 at 8) (citing R. Doc. 1-5 at 98).

In support of remand, Plaintiffs argue that Defendants' removal is untimely because it was clearly ascertainable from the Original Petition that the class exceeds 100 members. In so arguing, Plaintiffs contend that the LEDs and the sheriffs thereof—who appear as *ex officio* chief executive officers *and* in their official capacities as sheriffs—are two separate putative classes. (R. Doc. 19-1 at 8). Plaintiffs contend that paragraph 95 of the Original Petition clearly distinguishes the two types of putative classes by differentiating the damages suffered by each.

---

[3] Defendants also assert that Plaintiffs failed to allege in their original petition that their damages exceed $7,000,000 (R. Doc. 1 at 7). This statement, however, is inaccurate. In paragraph 51 of Plaintiffs' Original Petition, Plaintiffs expressly state that they have "expended approximately $15,000,000.00 towards the Sheriff Cyber Rebuild." They further express that "more costs are expected as the Sheriff Cyber Rebuild is far from concluded." (R. Doc. 1-1 at 12). In addition, $7,000,000 is not the jurisdictional threshold for CAFA jurisdiction. The law only requires Plaintiffs to plead damages in excess of $5,000,000. 28 U.S.C. § 1332(d)(2).

5

Particularly, paragraph 95 provides that an "excess of 50 [LEDs] have incurred remediation expenses and may incur notification expenses; and each has incurred damages as a result of Defendants' misconduct," while the sheriffs of same "have suffered monetary damage that is susceptible to precise calculation." (R. Doc 19-1 at 8) (citing R. Doc. 1-1 at 19). Additionally, paragraph 42 provides that "61 of the State of Louisiana's 64 [LEDs]" were contaminated by Defendants' products. (R. Doc. 19-1 at 8). Accordingly, the putative class includes 61 LEDs as one class and an additional 61 sheriffs as the second class, totaling 122 putative class members.

Next, Plaintiffs argue that the local controversy and home state abstentions of CAFA apply. According to Plaintiffs, the criteria of the local controversy abstention (28 U.S.C § 1332(d)(4)(A)) are met because: (1) 100% of the proposed class are citizens of Louisiana; (2) Teeters, Carrington, and 1120 South Pointe are Louisiana citizens that caused a significant portion of Plaintiffs injuries; (3) each of the Plaintiffs' injuries were suffered in their respective Louisiana parishes; and (4) none of the Plaintiffs previously filed suit against any of the Defendants as a class action. (R. Doc. 19-1 at 10-16).

With respect to the home state abstention, Plaintiffs argue that the Court is precluded from exercising jurisdiction because 100% of the proposed class are treated as citizens of Louisiana by operation of law and "the three primary Defendants are Louisiana citizens, whose Louisiana-based acts and omissions, caused damage to the proposed class." (R. Doc. 19-1 at 16).

In opposition, Defendants argue that the Petition "treats the sheriffs and [LEDs] as one, using their titles indiscriminately and interchangeably—but not separately." (R. Doc. 26 at 13). According to Defendants, "it strains reason" to think the Plaintiffs' statement that there are an "excess of 50 [LEDs]," but not more than 61 LEDs, consisted of 122 to 128 plaintiffs. (R. Doc. 14 at 26).

Defendants further argue that neither the local controversy nor home state abstention apply. With respect to the local controversy abstention, Defendants state that Plaintiffs' local controversy argument fails Plaintiffs cannot prove to with a reasonable certainty (1) that they seek "significant relief" from a Louisiana defendant and (2) that the Louisiana defendants' conduct forms a "significant basis" for the claims asserted. (R. Doc. 26 at 15).

First, Defendants argue that Plaintiffs' assertion that their claims against Teeters, Carrington, and 1120 South Pointe duplicate their claims against the other Defendants misses the mark of providing "detailed allegations or extrinsic evidence detailing the local defendant's conduct in relation to the out-of-state defendants." (R. Doc. 26 at 16) (quoting *Opelousas Gen. Hosp. Auth. v. FairPlay Sols., Inc.,* 655 F.3d 358, 363 (5th Cir. 2011)). Accordingly, Plaintiffs fail to show that the Louisiana defendants played a "significant" role in the alleged harm as opposed to a "lesser role, or even a minimal role." (R. Doc. 26 at 16) (citing *Opelousas Gen. Hosp.,* at 363; *Robert J. Caluda, APLC v. City of New Orleans,* 403 F. Supp. 3d 522, 539 (E.D. La. 2019)). Defendants further argue Plaintiffs do not seek "significant relief" from any of the local defendants. According to Defendants, "the 'deep pockets' Plaintiffs dig for here belong only to out-of-state defendants, particularly Verticals LLC and Verticals Inc." (R. Doc. 26 at 21).

Second, Defendants contend that Plaintiffs' home state abstention argument is meritless because the primary defendants are not all citizens of Louisiana. (R. Doc. 26 at 22).

### III.    Law and Analysis

#### A.    Legal Standard

A defendant may remove "any civil action brought in State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations

contained in the complaint. *St Paul Reinsurance Co., Ltd v. Greenberg,* 134 F.3d 1250, 1253 (5th Cir. 1998) ("jurisdictional facts must be judged as of the time the complaint is filed"). Furthermore, remand is proper if at any time the court lacks subject matter jurisdiction. *See* 28 U.S.C § 1447(c).

CAFA expanded federal district courts' original jurisdiction to include "class actions" and "mass actions" in which there is minimal diversity and the aggregate amount in controversy exceeds $5,000,000. *Mississippi ex rel. Hood v. AU Optronics Corp.,* 134 S.Ct. 736, 739-40 (2014). Under CAFA, federal diversity jurisdiction is conferred over class actions where (1) the number of individuals in the proposed class exceeds 100; (2) minimal diversity of citizenship exists, *i.e.,* at least one plaintiff and one defendant are from different states, and (3) the amount in controversy, exclusive of interests and costs, is greater than $5,000,000. 28 U.S.C. § 1332(d); *see Nolan v. Exxon Mobil Corp.,* No. 13-439, 2013 WL 6194621, at *2 (M.D. La. Nov. 26, 2013).

### 1. Timeliness

As to the issue of timeliness, 28 U.S.C. § 1446(b) delineates two scenarios for when an action must be removed. First, the notice of removal must be filed "within 30 days after the receipt by the defendant" when the initial pleading demonstrates a basis for removal. 28 U.S.C § 1446(b)(1). If, however, the initial pleading does not demonstrate a basis for removal, the notice of removal must "be filed within 30 days after receipt by the defendant" of a litigation document (either an "amended pleading, motion, order, or other paper") that makes jurisdiction "unequivocally clear and certain". 28 U.S.C. § 1446(b)(3); *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 211 (5th Cir. 2002).

The Fifth Circuit has provided a bright line rule that "the thirty-day removal period under [under § 1446(b)(1)] is triggered only where the initial pleading '*affirmatively reveals on its*

*face'"* that the jurisdictional requirements are met. *See Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 399 (5th Cir. 2013) (quoting *Chapman v. Powermatic, Inc.,* 969 F.2d 160, 163 (5th Cir. 1992)) (emphasis added by *Mumfrey*)).

Here, the issue is whether the Original Petition "affirmatively reveals on its face" that the CAFA numerosity requirement is met. Plaintiffs argue that the Original Petition discloses that there are 128 putative classes members, which includes 64 sheriffs as *ex officio* chief executive officers of their respective LEDs and 64 sheriffs in their official capacities as sheriff of their respective parishes.

Defendants argue that the Original Petition does not "affirmatively reveal on its face" that the sheriffs and LEDs are separate plaintiffs. The Court agrees that the Original Petition "treats the sheriffs and [LEDs] as one, using their titles indiscriminately and interchangeably—but not separately." (R. Doc. 26 at 12). In support of this argument, Defendants point to paragraph 40 of the Original Petition where in Plaintiffs allege that "Defendants provided services and/or software to hundreds of Louisiana governmental entities, including at least 61 of the State of Louisiana's [LEDs], *i.e.,* the Sheriffs." (R. Doc. 1-1 at 10; R. Doc. 26 at 12). Defendants contend that the phrase *i.e,* is the Latin abbreviation for "that is," therefore, "Plaintiffs plead that the districts are the sheriffs." (R. Doc. 26 at 12).

After careful review of the pleadings and the arguments of the parties, the Court finds that the Original Petition does not "affirmatively reveal on its face" that the numerosity requirement is met. As Defendants' contend, the Original Petition combines the sheriffs *as ex officio* chief executive officers of their respective LEDs and sheriffs in their official capacities as sheriff. There is nothing to reveal that the Original Petition was treating them as separate classes

9

of plaintiffs such that each should be counted twice. The removal clock, therefore, was not triggered by the Original Petition.

The Amended Petition, however, did trigger the 30-day removal clock. The Fifth Circuit has stated that the 30-day period is triggered by a defendant's receipt of an amended pleading only where jurisdiction is "unequivocally clear and certain" from the document. *See Bosky,* 288 F.3d at 211 (stating that the statutory term "ascertained" means "unequivocally clear and certain"). Here, the Amended Petition makes it "unequivocally clear and certain" that there are more than 100 class members. Particularly, the Amended Petition carefully lists 10 sheriffs *as ex officio* chief executive officers of their respective LEDs and an additional 10 sheriffs in their official capacities as plaintiffs. (*See* R. Doc. 1-5 at 75, 76). It then goes on to state that the 20 named plaintiffs appear as representatives "of 80 or more similarly situated duly elected sheriffs and law enforcement districts." (R. Doc. 1-5 at 76-77). Accordingly, (unlike the Original Petition) the Amended Petition leaves no room for ambiguity as to whether the numerosity requirement of CAFA is met. Removal is therefore timely as Defendants filed their Notice Removal within 30 days of receipt of Plaintiffs' Amended Petition.

Although undisputed by either party, the Court is concerned with the juridical existence of LEDs, and whether their lack of juridical independence vitiates the numerosity requirement. Notably, at least one Louisiana appellate court has explained that a LED "is a taxing entity." Therefore, "for all practical purposes," the LED of a parish is the sheriff's department of the parish. *Law Enf't Dist. of Par. of Avoyelles v. Avoyelles Par. Police Jury*, 98-996, 736 So.2d 842, 845 (La. App. 3 Cir. 2/3/99). Under this rule, the capacities of a sheriff as *ex officio* chief executive officer of a LED and as a duly elected sheriff are one in the same. A sheriff is inherently the chief executive offer of a LED, and vice versa. The Court questions whether the

10

same individual sheriff is properly considered two plaintiffs for CAFA purposes or simply one plaintiff suing in two capacities. That issue is not raised by either party. Because the undersigned recommends remand of this case, the Court need not resolve this issue.

### 2. Local Controversy

The Court next turns to Plaintiffs' local controversy argument. Under the local controversy exception, a district must decline jurisdiction if the following conditions are met:

(i) [the] class action [is one] in which—

    (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

    (II) at least 1 defendant is a defendant—

        (aa) from whom significant relief is sought by members of the plaintiff class;

        (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

        (cc) who is a citizen of the State in which the action was originally filed; and

    (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.

18 U.S.C. §1332(d)(4)(A).

"[T]he exception is intended to be narrow, 'with all doubts resolved in favor of exercising jurisdiction over the case.'" *Ictech-Bendeck v. Progressive Waste Solutions of LA, Inc.,* 367 F. Supp. 3d 555, 562 n.25 (E.D. La. 2019) (citing cases). The party moving to remand a class action to state court must prove by a preponderance of the evidence that the CAFA exceptions to federal jurisdiction divest the court of subject matter jurisdiction. *See Preston v. Tenet Healthsystem Mem. Med. Center, Inc.,* 485 F.3d 793, 797 (5th Cir. 2007) (citing *Frazier v. Pioneer Ams. LLC,* 455 F.3d 542, 546 (5th Cir. 2006; *Welsh v. Am. SuretyCo. of N.Y.,* 186 F.2d 16, 17 (5th Cir. 1951). Pertinently, CAFA's jurisdictional requirements mandate remand if at least one local defendant is a defendant from whom "significant relief" is sought by members of the whole class and whose alleged conduct forms a "significant basis" for the claims asserted. *See* 28 U.S.C. § 1332(d)(4)(A)(i)(II)(aa) and (bb). Accordingly, the key questions in the instant matter are (1) does one of the Louisiana defendant's conduct form a "significant basis" for the claims asserted *and* (2) have Plaintiffs shown that they seek "significant relief" from at least one of the Louisiana defendants.

First, Plaintiffs must show that at least one local defendant's "alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class." *Ictech-Bendeck,* 367 F. at 567. To make this showing, Plaintiffs must provide "detailed allegations" concerning "the local defendant's conduct in relation to the out-of-state defendants." *Id.* This is not to be misconstrued to require Plaintiffs to "provide a definitive analysis of the measure of damages caused by each Plaintiff." *Id.* All that is required is that the allegations show that the local

12

defendant "played a significant role in the alleged [harm], as opposed to a lesser role, or even a minimal role." *Id.*

According to Defendants, Plaintiffs' Amended Petition is bereft of specific allegations about Teeters, Carrington, or 1120 South Pointe. (R. Doc. 26 at 17). Defendants argue that it is not enough for Plaintiffs to assert that their claims against Teeters, Carrington, and 1120 South Pointe "duplicate their claims against the other Defendants." (R. Doc. 26 at 16) (quoting R. Doc. 19-1 at 11). Instead, Plaintiffs must "sufficiently distinguish between the conduct of [a local defendant] and that of [a foreign defendant]." (R. Doc. 26 at 17) (quoting *Opelousas Gen. Hosp.,* 655 F.3d at 361; *Robert J. Caluda,* 403 F. Supp. 3d at 539).

Additionally, Defendants argue that 1120 South Pointe cannot be held liable because "it sold all its technology and cybersecurity assets, business goodwill, and company name to i3-S&S." (R. Doc. 26 at 19). Accordingly, 1120 South Pointe currently "provide[s] *no* technology services, has *no* contracts with Plaintiffs, and *no* control over the relationship between Plaintiffs and their technology service provider." (R. Doc. 26 at 19). As such, 1120 South Pointe's conduct "cannot possibly form 'a significant basis' for" Plaintiffs' claims. (R. Doc. 26 at 19).

The Court disagrees. Plaintiffs have shown, by a preponderance of the evidence, that at least one Louisiana defendant's—chiefly, 1120 South Pointe— conduct forms a "significant basis" for their claims. The Amended Petition makes clear that the tortious conduct spanned from 2015-2020. (*See* R. Doc. 1-5 at 85). For the first several years, the out-of-state defendants were completely uninvolved and 1120 South Pointe was the only entity alleged to be responsible. Plaintiffs purchased the Products "almost exclusively" from 1120 South Pointe (under its former name) from 2015 until the end of 2018. (R. Doc. 1-5 at 79). Plaintiffs contend that the Products delivered were "woefully defective" and insufficient to protect" Plaintiffs' "computer systems

13

from, or providing warning to" Plaintiffs "about, the damage and vulnerabilities created by the misconduct" of Defendants. (R. Doc. 1-5 at 95). Particularly, Plaintiffs allege that "the Cybersecurity Administrators," which Plaintiffs define to include 1120 South Pointe, (R. Doc. 1-5 at 79), "failed to renew their email filtering subscription in 2016," (a year in which Plaintiffs purchased the Products "almost exclusively" from 1120 South Pointe) "which allowed malicious emails to comprise the Cybersecurity Administrators' internal servers." (R. Doc. 1-5 at 87).

Importantly, the out-of-state defendants, i3 S&S, i3-Verticals, Inc., and i3-Verticals, LLC, did not acquire 1120 South Pointe until 2018—three years after the alleged injurious conduct began. The Court therefore agrees that because 1120 South Pointe "almost exclusively" provided the Products that caused Plaintiffs alleged harm from 2015 until some time in 2018, "at least half of the injurious conduct was engaged in by" a local defendant. (R. Doc. 30 at 7). In addition, the harm caused during that time period is alleged to be ongoing. Plaintiffs, therefore, meet their burden of pleading that 1120 South Pointe played a significant role, as opposed to a minimal role, in the alleged harm.

Next, to determine whether Plaintiffs seek "significant relief" from at least one Louisiana defendant, the Court analyzes "how many members of the class were harmed by the defendant[s'] actions," "the relief sought between all defendants," and "each defendant[s'] ability to pay a potential judgment." *Ictech,* at 564 (citing *Robinson v. Cheetah Transp.,* NO. 06-0005, 2006 WL 468820, at *3 (W.D. La. Feb. 27, 2006). Plaintiffs rely on *Ictech,* which the Court also finds to be instructive. As explained in *Ictech,* "[i]t is rare that a court has found a defendant is not a significant defendant." *Ictech,* at 565. There, the court identified two scenarios in which a defendant is not a "significant" defendant: (1) when only a small portion of the class members have claims against that particular defendant; and (2) when the relief sought (or

14

reasonably expected) from a particular defendant is just small change in comparison to what the class is seeking from the other co-defendants. *Id.*

Plaintiffs maintain, and the Amending Petition confirms, that all putative class members assert claims against all defendants, including the three local defendants. Plaintiffs specifically allege that "Defendants," including 1120 South Pointe, rendered "services to all class members," and "the same deficient conduct, practices, and protocols of Defendants (including false and misleading statements and the suppression of material facts, and insufficient and deficient hiring practices) equally impacted and caused damage to all class members." (R. Doc. 1-5 at 99). Accordingly, the first scenario does not apply.

Likewise, the instant matter does not fall within the second scenario, as more than "just a small change" is sought from 1120 South Pointe in comparison to the out-of-state defendants. As noted earlier, because 1120 South Pointe "almost exclusively" provided the Products that caused Plaintiffs alleged harm from 2015 until some time in 2018, "at least half of the injurious conduct was engaged in by" a local defendant. (*See* R. Doc. 30 at 7). Consequently, at least half of the damages alleged by Plaintiffs are sought from 1120 South Pointe.

Plaintiffs have further met their burden of showing that 1120 South Pointe has the ability to pay. Defendants seemingly question 1120 South Pointe's ability to pay by stating that "when plaintiffs seek millions of dollars in relief," the "only defendants capable of paying it" are "large, corporate defendants." (R. Doc. 26 at 21). To support this proposition, Defendants cite several distinguishable cases. *See Robinson v. Cheetah Transp.,* No. 06-0005, 2006 WL 468820, at *3 (W.D. La. Feb. 27, 2006) (where the only local defendant was an individual truck driver, while the remaining defendants were four national companies); *Escoe v. State Farm Fire & Cas. Co.,* No. 07-1123, 2007 WL 1207231, at *3 (E.D. La. Apr. 23, 2007) (explaining that only a small

15

portion of the class had claims against the only local defendant because only a small portion utilized the services of the only local defendant); and *Eckerle v. Northrop Grumman Ship, Systems, Inc.,* No. 10-1460, 2010 WL 2651637, at *2 (E.D. La. June 25, 2010) (holding that the active corporation had a greater ability to pay because many of the former executives, who are individuals, were deceased). Unlike those cases, 1120 South Pointe is also an active corporate entity that, (according to exhibit "c" of Plaintiffs' Original Petition) is in good standing with the Louisiana Secretary of State. (R. Doc. 1-1 at 65). Plaintiffs further explain that 1120 South Pointe should have the ability to pay any judgment against it because it profited from the sale of its business in late 2018. (R. Doc. 30 at 7).

Considering the foregoing, the Court finds that Plaintiffs met their burden of showing that at least one local defendant, 1120 South Pointe, is a defendant from whom "significant relief" is sought by members of the whole class and whose alleged conduct forms a "significant basis" for the claims asserted. *See* 28 U.S.C. § 1332(d)(4)(A)(i)(II)(aa) and (bb). As such, the local controversy abstention applies, and the Court must remand the matter to state court.[4]

### 3. The "home-state exception" does not apply

Under the home state exception, a district court must decline jurisdiction if "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). "[T]he home state exception applies if all of the primary defendants are citizens"

---

[4] Because the local controversy abstention warrants remand, the Court need not address whether the Eleventh Amendment bars federal jurisdiction.

16

of the state where the action was filed. *Watson v. City of Allen, Tx.*, 821 F.3d 634, 641 (5th Cir. 2016).

In this case, there is no dispute that there are primary defendants that are not Louisiana citizens. Plaintiffs' claims include detailed allegations against i3-S&S (the entity that purchased the technology and cybersecurity assets business with the plaintiffs from 1120 South Pointe), Verticals LLC (whom Plaintiffs allege "direct[ed] a cover-up" of i3-S&S's technology failures), and Verticals Inc. (whom Plaintiffs allege operated with i3-S&S and Verticals LLC as "a single business enterprise").

Plaintiff has failed to meet his burden of proof of showing the home-state exception applies.

### 4. The truly localized controversy does not apply

Under the discretionary jurisdiction provision, a "district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction ... over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed...." 28 U.S.C. §1332(d)(3).

In the instant case, 100% of the proposed plaintiff classes are citizens of Louisiana. The plain language of the statute does not apply. In addition, as set forth above, "the primary defendants" are not all citizens of Louisiana. Because these requirements are not satisfied, the Court need not address the factors enumerated to guide any discretionary remand consideration. *Preston v. Tenet Healthsystem Memorial Medical Center, Inc.*, 485 F.3d 804, 812 (5th Cir. 2007)

(stating that the citizenship requirement is a prerequisite to the district court weighing the additional statutory factors).

### IV.    Conclusion

Based on the local controversy exception to CAFA jurisdiction,

**IT IS RECOMMENDED** that the Plaintiff's Motion to Remand (R. Doc. 19) be **GRANTED,** and the matter be remanded to the 19th Judicial District Court, East Baton Rouge Parish, Louisiana.

Signed in Baton Rouge, Louisiana, on July 5, 2022.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**