# *United States Court of Appeals*

### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

TEL. 504-310-7700
600 S. MAESTRI PLACE,
Suite 115
NEW ORLEANS, LA 70130

February 22, 2024

Mr. Michael L. McConnell
Middle District of Louisiana, Baton Rouge
United States District Court
777 Florida Street
Room 139
Baton Rouge, LA 70801

     No. 22-30553   State of Louisiana v. i3 Verticals
                USDC No. 3:21-CV-572

Dear Mr. McConnell,

Enclosed is a copy of the judgment issued as the mandate and a
copy of the court's opinion.

               Sincerely,

               LYLE W. CAYCE, Clerk

               By: _____
               Allison G. Lopez, Deputy Clerk
               504-310-7702

cc:  Mrs. Sarah W. Anderson
     Ms. Judy Y. Barrasso
     Ms. Chloe Marie Chetta
     Mr. James Henry Colvin Jr.
     Mrs. Bridget Benoit Denicola
     Ms. Alexandra Leigh Gjertson
     Mr. James Walter Frazer Green
     Mr. John W. Joyce
     Mr. Alfred Paul LeBlanc Jr.
     Mr. Steven Jay Levine
     Mr. Carlos Romanach I

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 1, 2023

Lyle W. Cayce
Clerk

No. 22-30553

---

STATE OF LOUISIANA, *By and Through its Division of Administration*;
EAST BATON ROUGE LAW ENFORCEMENT DISTRICT;
CLAIBORNE PARISH LAW ENFORCEMENT DISTRICT; RAPIDES
PARISH LAW ENFORCEMENT DISTRICT; EAST FELICIANA
PARISH LAW ENFORCEMENT DISTRICT; WEST FELICIANA
PARISH LAW ENFORCEMENT DISTRICT; GRANT PARISH LAW
ENFORCEMENT DISTRICT; ACADIA PARISH LAW ENFORCEMENT
DISTRICT; TANGIPAHOA PARISH LAW ENFORCEMENT
DISTRICT; FRANKLIN PARISH LAW ENFORCEMENT DISTRICT;
ASCENSION PARISH LAW ENFORCEMENT DISTRICT; SID J.
GAUTREAUX, III, *in his official capacity as Sheriff of East Baton Rouge
Parish*; SAMUEL A. DOWIES, *in his official capacity as Sheriff of Claiborne
Parish*; MARK WOOD, *in his official capacity as Sheriff of Rapides Parish*;
JEFF TRAVIS, *in his official capacity as Sheriff of East Feliciana Parish*;
BRIAN SPILLMAN, *in his official capacity as Sheriff of West Feliciana
Parish*; STEVEN MCCAIN, *in his official capacity as Sheriff of Grant Parish*;
K. P. GIBSON, *in his official capacity as Sheriff of Acadia Parish*; DANIEL
EDWARDS, *in his official capacity as Sheriff of Tangipahoa Parish*; KEVIN
COBB, *in his official capacity as Sheriff of Franklin Parish*; BOBBY WEBRE,
*in his official capacity as Sheriff of Ascension Parish*,

*Plaintiffs—Appellees,*

*versus*

I3 VERTICALS INCORPORATED; I3 VERTICALS, L.L.C.; I3-
SOFTWARE & SERVICES, L.L.C.; 1120 SOUTH POINTE
PROPERTIES, L.L.C., *formerly known as* SOFTWARE and SERVICES
OF LOUISIANA, L.L.C.; GREGORY TEETERS; SCOTT
CARRINGTON,

Certified as a true copy and issued
as the mandate on Feb 22, 2024

Attest:

Lyle W. Cayce
Clerk, U.S. Court of Appeals, Fifth Circuit

*Defendants—Appellants.*

———————————————————

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:21-CV-572

———————————————————

Before ELROD, HO, and OLDHAM, *Circuit Judges*.

## J U D G M E N T

This cause was considered on the record on appeal and was argued by counsel.

IT IS ORDERED and ADJUDGED that the judgment of the District Court is AFFIRMED.

IT IS FURTHER ORDERED that defendants-appellants pay to plaintiffs-appellees the costs on appeal to be taxed by the Clerk of this Court.

ANDREW S. OLDHAM, *Circuit Judge*, dissenting.

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 1, 2023

Lyle W. Cayce
Clerk

No. 22-30553

───────────────

State of Louisiana, *By and Through its Division of Administration*; East Baton Rouge Law Enforcement District; Claiborne Parish Law Enforcement District; Rapides Parish Law Enforcement District; East Feliciana Parish Law Enforcement District; West Feliciana Parish Law Enforcement District; Grant Parish Law Enforcement District; Acadia Parish Law Enforcement District; Tangipahoa Parish Law Enforcement District; Franklin Parish Law Enforcement District; Ascension Parish Law Enforcement District; Sid J. Gautreaux, III, *in his official capacity as Sheriff of East Baton Rouge Parish*; Samuel A. Dowies, *in his official capacity as Sheriff of Claiborne Parish*; Mark Wood, *in his official capacity as Sheriff of Rapides Parish*; Jeff Travis, *in his official capacity as Sheriff of East Feliciana Parish*; Brian Spillman, *in his official capacity as Sheriff of West Feliciana Parish*; Steven McCain, *in his official capacity as Sheriff of Grant Parish*; K. P. Gibson, *in his official capacity as Sheriff of Acadia Parish*; Daniel Edwards, *in his official capacity as Sheriff of Tangipahoa Parish*; Kevin Cobb, *in his official capacity as Sheriff of Franklin Parish*; Bobby Webre, *in his official capacity as Sheriff of Ascension Parish*,

*Plaintiffs—Appellees*,

*versus*

i3 Verticals Incorporated; i3 Verticals, L.L.C.; i3-Software & Services, L.L.C.; 1120 South Pointe Properties, L.L.C., *formerly known as* Software and Services of Louisiana, L.L.C.; Gregory Teeters; Scott Carrington,

*Defendants—Appellants.*

---

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:21-CV-572

---

Before ELROD, HO, and OLDHAM, *Circuit Judges*.

JAMES C. HO, *Circuit Judge*:

The Class Action Fairness Act excludes federal jurisdiction over class actions with "less than 100" plaintiff class members. *See* 28 U.S.C. § 1332(d)(5)(B). In this class action brought by Louisiana sheriffs and law enforcement districts, we hold that the law enforcement districts are separate entities from the sheriffs, and that together, they bring the total number of Plaintiffs over the hundred-plaintiff threshold.

We nevertheless conclude that this class action does not belong in federal court. That's because the Act also establishes a local controversy exception to federal jurisdiction. 28 U.S.C. § 1332(d)(4). This exception requires at least one in-state defendant "whose alleged conduct forms a significant basis for the claims asserted" and "from whom significant relief is sought." *Id.* § 1332(d)(4)(A)(i)(II).

Plaintiffs allege harm from unlawful conduct spanning from 2015 to 2020. Defendants include an in-state business allegedly responsible for all of Plaintiffs' harms until 2018, when it was acquired by an out-of-state business. We must decide whether the in-state Defendants' conduct forms a "significant basis" for Plaintiffs' claims, and whether Plaintiffs are seeking "significant relief" from the in-state Defendants. We answer yes to both questions and therefore affirm the district court in remanding this case to state court under the local controversy exception.

No. 22-30553

## I.

This is a class action brought by Louisiana sheriffs and Louisiana law enforcement districts against purveyors of software. The sheriffs and law enforcement districts allege that the software purveyors sold them defective software and then failed to administer the software properly. This failure to service the software properly took place continuously over a period from 2015 to 2020.

Crucially for this appeal, Defendants include both in-state and out-of-state software purveyors. From 2015 to late 2018, only in-state Defendants were responsible for the alleged wrongdoing—South Pointe, a Louisiana company, and its owner, Gregory Teeters, a Louisiana individual. In late 2018, out-of-state company i3-Software and Services acquired South Pointe's software business. As a result, i3-Software and Services—together with its alter egos, out-of-state entities i3 Verticals, LLC and i3 Verticals, Inc., and its Louisiana owner, Scott Carrington—bears responsibility for the alleged conduct after 2018.

Plaintiffs originally sued in Louisiana state court. But Defendants removed to federal district court. Plaintiffs then sought remand to Louisiana state court, arguing that the local controversy exception to the Class Action Fairness Act applied. The magistrate issued a report that recommended remand under the local controversy exception. The district court adopted the magistrate's report. Defendants now appeal the district court's remand to state court.

## II.

To be heard in federal court, a class action must have at least a hundred plaintiff class members. That's because the Class Action Fairness Act excludes federal subject-matter jurisdiction over a class action where "the number of members of all proposed plaintiff classes in the aggregate is

less than 100." 28 U.S.C. § 1332(d)(5)(B). *See Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 169 (2014) ("CAFA provides that in order for a class action to be removable, 'the number of members of all proposed plaintiff classes' must be 100 or greater.").

Plaintiffs argue that this class action is not removable to federal court because it has fewer than a hundred class members. This argument goes to subject-matter jurisdiction, so we are duty-bound to consider it, even though Plaintiffs raise it for the first time on appeal. *See Capron v. Van Noorden*, 6 U.S. 126, 126–27 (1804).

As Plaintiffs explain, you can reach the hundred-person jurisdictional threshold only by adding the sixty-four Louisiana law enforcement districts to the sixty-four Louisiana sheriffs. And Plaintiffs urge that the law enforcement districts are not separate entities capable of suit. Instead, Plaintiffs claim, each law enforcement district is one with its sheriff. Take away the law enforcement districts as separate juridical persons, and you're left with the sixty-four sheriffs—far fewer than the hundred plaintiffs required for federal jurisdiction.

State law determines whether a local government entity, such as a law enforcement district, is a person capable of suit. Under the Federal Rules, an entity's "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3). *See Edmiston v. Louisiana Small Business Development Center*, 931 F.3d 403, 406 (5th Cir. 2019) ("[T]he capacity of an entity which is neither an individual nor a corporation to be sued in federal court is determined by state law."); *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991) (applying Texas state law to determine whether a Texas local government entity had the capacity to sue or be sued in an appeal from the Southern District of Texas).

This is an appeal from the Middle District of Louisiana. So Louisiana state law governs whether the Louisiana law enforcement districts can sue as plaintiffs, distinct from the Louisiana parish sheriffs.

"Under Louisiana law, a governmental entity is an independent juridical entity when 'the organic law grants it the legal capacity to function independently and not just as the agency or division of another governmental entity.'" *Edmiston*, 931 F.3d at 407 (quoting *Roberts v. Sewerage & Water Bd. of New Orleans*, 634 So. 2d 341, 347 (La. 1994)).

Louisiana law, including the organic law that establishes the law enforcement districts, grants the districts the capacity to function independently from the sheriffs. So the law enforcement districts are distinct juridical persons capable of suit.

The sheriffs and the law enforcement districts stem from distinct sources of organic law. The state constitution directly creates the office of parish sheriff. *See* La. Const. art. 5, § 27 ("In each parish a sheriff shall be elected for a term of four years. He shall be the chief law enforcement officer in the parish."). The law enforcement districts, by contrast, are creatures of statute. *See* La. Stat. Ann. § 13:5901 ("There is hereby created, in each parish . . . a special district to be known as a law enforcement district for the purpose of providing financing to the office of sheriff for that parish.").

State statute empowers law enforcement districts to "execute . . . contracts and other instruments." La. Stat. Ann. § 13:5904(A)(1). And it makes those contracts "binding upon the district . . . notwithstanding that the term of such contract . . . extends beyond the expiration of the term of the current ex officio chief executive officer," that is, the sheriff. *Id.* § 13:5904(B).

As the state Attorney General has explained, this means that a law enforcement district is distinct from the sheriff. The organic statutes "create a public entity known as the 'Law Enforcement District' for each parish, separate from the Sheriff, which has perpetual existence and which is therefore capable of entering into obligations exceeding the term of a Sheriff." Louisiana Attorney General Opinion No. 09-0003 (Apr. 30, 2009), 2009 WL 1416444, at *2 (quoting Louisiana Attorney General Opinion No. 08-0072 (Apr. 10, 2008)).

A sheriff's contracts only bind that sheriff, and not his successor. By contrast, a law enforcement district's contracts may bind that district even past the current sheriff's term of office. *See id.* at *2–3. And that's why the state legislature created separate law enforcement districts: as a workaround for the problem of a sheriff's contracts binding only the current sheriff. *Id.* at *2.

So a law enforcement district can enter contracts that bind the district beyond the sheriff's term. Similarly, a law enforcement district can own property, *see* La. Stat. Ann. § 13:5522(D)—property that the sheriff himself does not own, *see Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 283 (5th Cir. 2002). So it would be surprising if a law enforcement district lacked the capacity to sue and be sued as a distinct juridical person.

Unsurprisingly, Louisiana courts treat law enforcement districts as capable of suit. *See*, *e.g.*, *Law Enforcement District of Jefferson Parish v. Mapp Construction, LLC*, 296 So. 3d 1260, 1262 (La. Ct. App. 2020) (law enforcement district sues contractor for breach); *Natchitoches Parish Law Enforcement District v. Decimal, Inc.*, 124 So. 3d 549, 553 (La. Ct. App. 2013) (affirming sanctions against defendant in suit brought by law enforcement district).

By contrast, a sheriff's office has no status independent from that of the sheriff himself. *See Edmiston*, 931 F.3d at 407 ("Louisiana sheriffs are juridical entities that can be sued, but Louisiana sheriff's offices are not."). Accordingly, when a sheriff's office is listed as a defendant, Louisiana courts either dismiss claims against the sheriff's office, *see Markley v. Town of Elton*, 829 So. 2d 1213, 1214 n.1 (La. Ct. App. 2002), or they substitute the sheriff as the correct defendant, *see Chandler v. Ouachita Parish Sheriff's Office*, 121 So. 3d 1216, 1219 n.1 (La. Ct. App. 2013).

Plaintiffs here argue that a law enforcement district, like a sheriff's office, is one with the sheriff. That's because the sheriff is "ex officio the chief executive officer of the district," which is "coterminous with the boundaries of the parish." LA. STAT. ANN. § 13:5901. But the fact that the sheriff is the CEO of the law enforcement district does not vitiate the district's separate juridical personhood. Unlike the sheriff's office, which is "simply an office operated by the Sheriff . . . whose authority is derived from the state constitution," *Edmiston*, 931 F.3d at 407 (quoting *Ferguson v. Stephens*, 623 So. 2d 711, 715 (La. Ct. App. 1993)), the law enforcement district is a separate creation of the state legislature.

The law enforcement district's distinct organic law, LA. STAT. ANN. § 13:5901–5912, grants it capacities distinct from those of the sheriff himself—including, implicitly, the capacity to sue. This means that the Louisiana law enforcement districts can be plaintiffs, bringing the number of Plaintiffs past the hundred-plaintiff minimum jurisdictional threshold. Accordingly, we reject Plaintiffs' contention that we must remand to state court for lack of subject-matter jurisdiction under § 1332(d)(5)(B).

## III.

Nevertheless, Plaintiffs are right that remand is appropriate under CAFA's local controversy exception to federal jurisdiction. This exception

requires that federal courts decline to hear certain class actions of a local nature. It ensures that a state court will hear a class action that, among other requirements, involves largely in-state plaintiffs and at least one in-state defendant. *See* 28 U.S.C. § 1332(d)(4).

CAFA's local controversy exception, 28 U.S.C. § 1332(d)(4)(A), reads as follows:

> A district court shall decline to exercise jurisdiction . . . over a class action in which . . . greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed; [and] . . . at least 1 defendant is a defendant . . . from whom significant relief is sought by members of the plaintiff class; . . . whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and . . . who is a citizen of the State in which the action was originally filed.

To put it simply, "the local controversy exception requires a local defendant (a) from whom significant relief is sought; and (b) whose alleged conduct forms a significant basis for the claims asserted." *Williams v. Homeland Ins. Co. of N.Y.*, 657 F.3d 287, 291–92 (5th Cir. 2011) (citing 28 U.S.C. § 1332(d)(4)(A)(i)(II)). These are known as the "significant relief" and "significant basis" prongs of the local controversy exception. The exception also requires, *inter alia*, a supermajority of in-state plaintiffs, but it is undisputed that Plaintiffs have met that requirement.

When the district court remands a case to state court under the local controversy exception, we review the remand de novo. *Arbuckle Mountain Ranch of Tex., Inc. v. Chesapeake Energy Corp.*, 810 F.3d 335, 337 (5th Cir. 2016). Where, as here, the plaintiffs are seeking remand, "[t]he plaintiffs bear the burden of establishing that they fall within CAFA's local controversy exception." *Opelousas Gen. Hosp. Auth. v. FairPay Sols., Inc.*, 655 F.3d 358, 360 (5th Cir. 2011) (per curiam).

Defendants allege that the district court erred by remanding to state court under the local controversy exception. Defendants argue that the district court applied a more lenient burden of proof to Plaintiffs' allegations than what CAFA allows. Defendants also deny that Plaintiffs have satisfied the "significant basis" prong. The in-state Defendants' conduct, they argue, does not form a "significant basis" of the claims. Finally, Defendants deny that Plaintiffs satisfied the "significant relief" prong of the local controversy exception. Plaintiffs, they argue, do not seek "significant relief" from the in-state Defendants.

We reject Defendants' arguments against remand to state court.

## A.

Defendants argue that the district court erred by holding Plaintiffs to a more lenient burden of proof than CAFA allows. On Defendants' view, circuit precedent requires plaintiffs to prove the applicability of the local controversy exception "with reasonable certainty." *Arbuckle*, 810 F.3d at 338. By using a "preponderance of the evidence" standard, the district court (so the argument goes) flouted precedent.

We reject Defendants' argument. We hold that a preponderance of the evidence suffices to establish the applicability of the local controversy exception.

To be sure, our court's panel in *Arbuckle* observed that "[i]f the applicability of an exception [to CAFA] is not shown with reasonable certainty, federal jurisdiction should be retained." *Id.*

But caselaw prior to *Arbuckle* stated the standard as "preponderance of the evidence." *See, e.g.*, *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 569–70 (5th Cir. 2011) ("CAFA requires federal courts to decline jurisdiction over a proposed class action if . . . the [local controversy]

exception[] is proven by a preponderance of the evidence."). And under our circuit's rule of orderliness, *Arbuckle* was bound by this previous panel decision. *See Gahagan v. USCIS*, 911 F.3d 298, 302 (5th Cir. 2018).

Likewise, our caselaw since *Arbuckle* has continued to state the standard as "preponderance of the evidence." *See, e.g., Stewart v. Entergy Corp.*, 35 F.4th 930, 932 (5th Cir. 2022) ("The party seeking remand bears the burden of establishing, by a preponderance of the evidence, that the local controversy . . . requirements are met.").

As we now read *Arbuckle*, it simply restates the same preponderance standard in different language. After all, "the language of an opinion is not always to be parsed as though we were dealing with the language of a statute." *Brown v. Davenport*, 142 S. Ct. 1510, 1528 (2022). We need not take "reasonable certainty" to mean something different from "preponderance of the evidence."

*Arbuckle* itself equivocates between "reasonable certainty" and "preponderance of the evidence." *Compare* 810 F.3d at 338 (exception must be shown "with reasonable certainty") *with id.* at 339 (requirement must be proven "by a preponderance of the evidence").

And circuit precedent treats the two terms as synonyms in other contexts. *See Mobil Expl. & Producing U.S., Inc. v. Cajun Constr. Servs., Inc.*, 45 F.3d 96, 101–02 (5th Cir. 1995) ("[T]he plaintiff must prove damages with reasonable certainty, but this merely means that the plaintiff must prove damages by a preponderance of the evidence as in other civil contexts.") (footnote omitted). So here too we hold that this circuit's invocation of "reasonable certainty" simply means "preponderance of the evidence" when it comes to the burden of proof for the local controversy exception.

**B.**

For the local controversy exception to apply, an in-state defendant's alleged conduct must "form[] a significant basis for the claims asserted by the proposed plaintiff class." 28 U.S.C. § 1332(d)(4)(A)(i)(II)(bb).

Plaintiffs and Defendants agree that our decision in *Opelousas* provides the correct standard for the "significant basis" prong of the local controversy exception. Under *Opelousas*, the plaintiffs must provide "information about the conduct of [an in-state defendant] relative to the conduct of the other defendants." 655 F.3d at 361. That is, they must "distinguish[]" an in-state defendant's alleged conduct and "estimate" the alleged conduct attributable to an in-state defendant versus the out-of-state defendant. *Id.* at 362. By doing all this "in the allegations of the complaint," the plaintiffs can "establish that [the in-state defendant's] conduct forms a significant basis of [their] claims." *Id.*

In their first amended petition, the operative complaint, Plaintiffs allege that "Sheriffs unknowingly purchased defective cybersecurity hardware and software products . . . . The Products were purchased exclusively, or almost exclusively, from [in-state] defendants 1120 South Pointe and Gregory R. Teeters."

The original sale contracts stipulated that in-state Defendants South Pointe and Teeters "would provide, for a limited time after the delivery of the Products, cybersecurity services in support of the Products." And, "[a]fter the obligation to deliver such cybersecurity services in the Products['] sale contracts expired by their terms, The Sheriffs made new agreements with [in-state Defendants] 1120 South Pointe and Gregory R. Teeters for the sole purpose of delivering cybersecurity services."

Only "[i]n 2018 [was] the business of [in-state defendant] 1120 South Pointe . . . acquired from [in-state-defendant] Gregory Teeters by [out-of-

state] defendants i3-Software & Services, i3-Verticals, Inc., and i3-Verticals, LLC." Following this acquisition, "[out-of-state defendant] i3-Software & Services and [in-state defendant] Scott Carrington assumed [in-state defendant] 1120 South Pointe's prior role as the provider of cybersecurity services to the Sheriffs."

Thus, while the petition alleges that "[a]t times between 2015 and 2020, the Cybersecurity Administrators and their employees engaged in the following [unlawful] activities," all the unlawful conduct prior to the 2018 acquisition is attributable solely to in-state defendants South Pointe and Teeters. And after the 2018 sale, the unlawful conduct is partially attributable to in-state Defendant Carrington, who "personally negotiated and/or signed" service agreements with Sheriffs and oversaw the company's activities.[1]

Moreover, the sheriffs bring their redhibition claim—a claim for the sale of a defective product, *see* La. Civ. Code Ann. art. 2520 *et. seq.*—solely against in-state Defendants South Pointe and Teeters. That's because only the in-state Defendants were responsible for the sale of the defective products, which occurred prior to the 2018 acquisition.[2]

As to claims involving deficient cybersecurity services, Plaintiffs allege that "[a]ll class members . . . received substantially the same cybersecurity services from all Defendants." The "deficient conduct,

---

[1] Because the dissent believes that the post-acquisition conduct is most important, it characterizes this a "dispute . . . predominantly between Louisiana plaintiffs and i3 Verticals, which is a citizen of Delaware and Tennessee." *Post*, at _. This ignores the fact that, even after the 2018 acquisition, a Louisiana defendant was at the helm of the out-of-state business and thus was allegedly responsible for the unlawful conduct as well.

[2] In arguing that "South Pointe's conduct was far from a significant portion of plaintiffs' claims," *post*, at _, the dissent glosses over this redhibition claim.

practices, and protocols of Defendants . . . equally impacted and caused damage to all class members."

Plaintiffs, then, easily satisfy our circuit's standard for the "significant basis" prong. From 2015 to 2018, in-state Defendants South Pointe and Teeters were solely responsible for the defective cybersecurity practices. Only in 2018 did out-of-state Defendants i3-Software & Services, i3 Verticals, Inc., and i3 Verticals, LLC acquire the cybersecurity business and became responsible for the unlawful cybersecurity practices. Of the continuous unlawful conduct between 2015 to 2020, all conduct prior to the 2018 acquisition is attributable solely to in-state Defendants—as is the initial unlawful sale of the defective products.

The 2018 business acquisition cleanly "distinguishes" the conduct attributable solely to the in-state Defendants from that attributable to out-of-state Defendants. *Opelousas*, 655 F.3d at 362. And this dividing line likewise provides an "estimate" of how much unlawful conduct is on the in-state Defendants versus the out-of-state Defendants. *Id.*

As Plaintiffs explained in the district court below, "Louisiana Defendants (1120 South Pointe and Gregory Teeters) were exclusively responsible for the sale of defective software products, and all negligent and wrongful conduct related to the provision of cybersecurity services, occurring between 2015 and 'late 2018.'" The "harm . . . caused by this . . . conduct was ongoing, and continued unabated until 2020." Out of some five years of continuous unlawful conduct, about three are attributable solely to the in-state Defendants.

The dissent alleges that we are treating "time [as] the basis of comparison," when "Congress told us to evaluate the relative significance of South Pointe's *conduct*." *Post*, at __. But we are not looking to time instead of the in-state Defendants' conduct. We are looking to time to determine the

significance of the in-state Defendants' conduct. Time is relevant to the inquiry in a case such as this one, where Plaintiffs allege a continuing tort, with in-state Defendants and out-of-state Defendants responsible for that continuous unlawful conduct at different times.

We hold that Plaintiffs have satisfied the "significant basis" prong of the local controversy exception.

## C.

The local controversy exception also requires at least one in-state defendant "from whom significant relief is sought by members of the plaintiff class." 28 U.S.C. § 1332(d)(4)(A)(i)(II)(aa). Defendants argue that the in-state defendant must have a "greater ability to pay" than the out-of-state defendants. In other words, they say the in-state defendant must have "deep pockets." We disagree.

When it comes to CAFA's local controversy exception, the "significant relief" prong means what it says. Any plaintiff who seeks significant relief from an in-state defendant satisfies the prong, regardless of how much the in-state defendant can actually pay.

The interpretation of the "significant relief" prong is an issue of first impression in our circuit. We begin where we always do—with the text. And all the text requires is that "significant relief is sought" from an in-state defendant. *Id.* It says nothing about the in-state defendant's ability to pay.

That's enough to end our inquiry. But it's worth noting that our sister circuits have taken the same view. *See Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1245 (10th Cir. 2009) (per curiam) ("The statutory language is unambiguous, and a 'defendant from whom significant relief is sought' does not mean a 'defendant from whom significant relief may be obtained.'"); *Coleman v. Estes Express Lines, Inc.*, 631 F.3d 1010, 1016 (9th

Cir. 2011) (rejecting the argument that "a determination whether 'significant relief is sought' against the local defendant under subsection (aa) requires a factual determination about the respective ability of the various defendants to satisfy a judgment"); *Walsh v. Defs., Inc.,* 894 F.3d 583, 592 (3rd Cir. 2018) ("[B]ased on the plain language of the statute, 'a defendant from whom significant relief is sought does not mean a defendant from whom significant relief may be obtained.'") (quoting *Coffey*); *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1161 (11th Cir. 2021) ("Nothing in the statute indicates that district courts must conduct a factual inquiry into whether a defendant has the financial means to pay the damages alleged in the complaint. CAFA does not require the district court to examine a defendant's ability to pay based on the unambiguous plain meaning of the statute's text."). The dissent's contrary view would create a circuit split. We decline to break with our sister circuits, which have thoughtfully analyzed the relevant statutory language.

So we hold that an in-state defendant's ability to pay is irrelevant to the "significant relief" prong of the local controversy exception. All that matters is what the plaintiffs seek in damages—not whether there's any likelihood that they will obtain what they seek. If plaintiffs seek significant relief from an in-state defendant, then they satisfy the prong.

Under this standard, Plaintiffs have easily shown that they are seeking significant relief from the in-state Defendants. In their petition for damages, Plaintiffs have alleged that all class members were harmed by the in-state Defendants' actions between 2015 and 2018. The in-state Defendants were solely responsible for the harm to Plaintiffs during that period—over half of the time period, from 2015 to 2020, during which Plaintiffs allege continuing injury. Thus, as the district court found, at least half of the damages Plaintiffs allege are sought from the in-state Defendants.

The dissent claims that we are misconstruing the term "sought." We certainly agree with the dissent that "hyper-literalism is bad textualism." *Post*, at __. But we reject the notion that our reading of "sought" is hyper-literalistic. We are simply applying the ordinary meaning of the verb "to seek."

As used by Subparagraph (aa), "to seek" means "[t]o ask for, demand, request (*from* a person)." Oxford English Dictionary (2nd ed. 1989), *s.v.*, *seek*, sense 1.8.a. *See also* Matthew 7:7 ("Ask, and it shall be given you; seek, and ye shall find; knock, and it shall be opened unto you."). And although the Bible teaches that those who seek from the Lord shall find, when we seek something from our fellow man, we don't always get it.

The dissent theorizes that no one ever "seeks" anything "without at least an infinitesimal hope of finding" it. *Post*, at __. But that defies common usage of the term.

When a prospective student applies to an academic program, we say that he is "seeking" admission. *See*, *e.g.*, *Applications Remain High*, Harv. Gazette (Feb. 3, 2014) ("This year, 34,295 people sought admission to the Class of 2018. Last year, a record 35,023 applied . . . ."); Lindsay Ellis, *Justice Dept. Slams Harvard Admissions in Affirmative-Action Filing*, Chron. Higher Educ. (Aug. 30, 2018) (discussing "a lawsuit brought on behalf of Asian-American students who had sought admission to the university"). And that is so even though it's common knowledge that an applicant with grades and test scores below a certain level may not have even an "infinitesimal hope" of obtaining the admission he seeks. So too here: A plaintiff without realistic hope of getting the defendant to transfer money into his account can still seek significant relief from that defendant. This is

especially so because the court has the power to award a judgment of money damages even against an insolvent defendant.

The dissent's understanding of the term "seek" also runs into 28 U.S.C. § 1332 itself. Consider § 1332(d)(3)(C). That provision directs courts to consider "whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction" when deciding if they should decline to exercise jurisdiction. *Id.* Surely a pleading that aims to avoid Federal jurisdiction falls within the reach of this provision, even if that goal is unlikely to succeed.[3]

We hold that Plaintiffs have easily satisfied the "significant relief" prong of the local controversy exception.

* * *

We affirm.

---

[3] We also disagree with the dissent as a factual matter. The dissent claims that it is "literally impossible" for Plaintiffs to recover from South Pointe. But South Pointe remains a limited liability company in good standing. We do not presume to know what additional employees or assets the company might acquire in the future.

ANDREW S. OLDHAM, *Circuit Judge*, dissenting:

I agree with the majority that this case satisfies the Class Action Fairness Act's ("CAFA's") 100-plaintiff requirement. *See* 28 U.S.C. § 1332(d)(5)(B). But my esteemed colleagues and I part ways on the rest. This dispute is predominantly between Louisiana plaintiffs and i3 Verticals, which is a citizen of Delaware and Tennessee. That means this case belongs in federal court.

In holding otherwise, the majority points to CAFA's local controversy exception, *id*. § 1332(d)(4)(A). That exception provides that federal jurisdiction sometimes does not extend to a class action involving a local defendant—that is, a defendant who is a citizen of the State where the class action was filed. *See id*. § 1332(d)(4)(A)(i)(II)(cc). To prevent artful pleading that would destroy CAFA jurisdiction, however, Congress placed careful limits on which local defendants trigger the exception. Two of those limits are relevant here. First, to belong in state court, the action must involve a local defendant "from whom significant relief is sought by members of the plaintiff class." *Id*. § 1332(d)(4)(A)(i)(II)(aa). And second, to belong in state court, the action must involve a local defendant "whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class." *Id*. § 1332(d)(4)(A)(i)(II)(bb).

Here, the purportedly local defendant is "South Pointe," a defunct shell LLC in Louisiana with no assets, facilities, business, or employees. In my view, South Pointe does not satisfy either (I) the "seeks significant relief" requirement of Subparagraph aa or (II) the "significant conduct" requirement of Subparagraph bb.

I.

A.

Start with the "seeks significant relief" prong in Subparagraph (aa). For the exception to apply, the defendant must be one "from whom significant relief is sought by members of the plaintiff class." *Id.* § 1332(d)(4)(A)(i)(II)(aa). "Sought" is the past tense and past participle of "seek." And "seek" means "to go in search of," "to try to reach or come to," or "to endeavor to make discovery of." *Seek*, Webster's New International Dictionary 2266 (2d. ed. 1934; 1950) [hereinafter "Webster's Second"]. Each of these definitions features a referent object—"of" or "to" [the object]. The actor "go[es] in search of" [something], or "endeavor[s] to make discovery of" [something] or "tr[ies] to reach" [something or somewhere]. Said differently, no one seeks without at least an infinitesimal hope of finding. Likewise, when we consider what a plaintiff "seeks," we ought not blind ourselves to their literal impossibility of finding.

It is literally impossible for plaintiffs to get any relief (let alone significant relief) against South Pointe. It is true, I suppose, that plaintiffs could be said to "seek relief" from South Pointe in the sense that they sued that defunct shell with no assets, facilities, business, or employees. But if that is what Subparagraph (aa) means, then Subparagraph (aa) means nothing because a plaintiff can always sue someone for something—even if they are guaranteed with 100% certainty to recover nothing. That turns the limit on artful pleading in Subparagraph (aa) into a nullity. And in the process, it offends both the surplusage canon and hyper-literalist canon. *See Wash. Mkt. Co. v. Hoffman*, 101 U.S. 112, 115–16 (1879) ("As early as in Bacon's Abridgment, sect. 2, it was said that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be

superfluous, void, or insignificant.'"); *United States v. Palomares*, 52 F.4th 640, 648–49 (5th Cir. 2022) (Oldham, J., concurring in the judgment) (hyper-literalism is bad textualism).

## B.

The majority opinion counters that my reading of Subparagraph (aa) "defies common usage of the term [seek]" and would create a circuit split. *See ante*, at 14–16. I'm not persuaded by either contention.

First, the majority opinion's examples support my understanding of Subparagraph (aa). The Bible says "seek, and ye shall find" precisely because God gives us hope and faith, MATTHEW 7:7—two things that plaintiffs do *not* have in "seeking" to recover from a defunct shell company. And when a student "seeks" admission to a college or university, he or she obviously hopes to get in even if the odds are long—again, a hope that plaintiffs do *not* have in "seeking" to recover from a defunct shell company. True, a plaintiff can "seek" to get rich by playing the lottery, even "without any realistic hope of" winning it. *Ante*, at 16. But even the lottery player has a non-zero chance of winning, which is more than plaintiffs' chance of recovering from South Pointe.

Second, the majority opinion notes other circuits have said a defendant's ability to pay is irrelevant to the "significant relief" inquiry. *See ante*, at 14–15 (citing *Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1245 (10th Cir. 2009) (per curiam); *Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010, 1020 (9th Cir. 2011); *Walsh v. Defenders, Inc.*, 894 F.3d 583, 592 (3rd Cir. 2018); *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1161 (11th Cir. 2021)). But one of those cases involved an entity whose ability to satisfy a judgment was not in question. *See Walsh*, 894 F.3d at 592 (noting only that defendant's liability might technically be satisfied through another entity by virtue of a corporate reorganization). And the others involved

persons or entities of uncertain financial status, such that it would have required jurisdictional mini-trials to determine the defendants' abilities to pay. *See Coffey*, 581 F.3d at 1245 (inquiring about defendant's financial status would require a "mini trial[ ] involving consideration of multiple insurance coverage litigation settlement agreements, the solvency of different carriers, pollution and other policy exclusions, etc."); *Coleman*, 631 F.3d at 1020 ("There is nothing in the complaint to suggest that [defendant] is a nominal defendant, or that [defendant] has so few assets . . . that [plaintiff] is not seeking significant monetary relief from it."); *Marcus & Millichap*, 991 F.3d at 1160 (noting nothing indicated the defendant lacked means to satisfy any potential judgment). And it was wariness of these factual inquiries that motivated the courts' holdings. *See, e.g.*, *Coffey*, 581 F.3d at 1245 ("[T]here is nothing in the language of the statute that indicates Congress intended district courts to wade into the factual swamp of assessing the financial viability of a defendant as part of this preliminary consideration . . . .").

South Pointe, by contrast, is a defunct, asset-less, shell company that obviously cannot pay. We do not need a mini-trial or any factual inferences to determine whether plaintiffs can recover anything (let alone something significant) because the facts are undisputed. And while the Ninth Circuit held evidence of a defendant's ability to pay should not be considered in the "significant relief" inquiry, it also explained defendants (like South Pointe) who *obviously* lack any ability to pay would not satisfy the test. *Coleman*, 631 F.3d at 1019–20. So it's unclear that my reading of Subparagraph (aa) would create a circuit split.

## II.

Next consider the significant conduct prong in Subparagraph (bb). That prong requires that, for a suit to belong in state court, the class action must involve a local defendant "whose alleged conduct forms a significant

basis for the claims asserted" by plaintiffs. *See* 28 U.S.C. § 1332(d)(4)(A)(i)(II)(bb).

Significant means something with significance. *See Significant*, WEBSTER'S SECOND, *supra*, at 2335. And significance means having "importance" or "weight." *Significance*, WEBSTER'S SECOND, *supra*, at 2335. Ideas like "importance" or "weight" invite relativistic comparison, which makes sense in this context. CAFA's local controversy exception tasks us with deciding whether the character of the controversy is holistically local, not whether any fiber of it might be.

The majority seems to agree with me, so far. That is presumably why the majority bases its judgment on a relativistic comparison: the length of time of South Pointe's alleged involvement versus that of i3 Verticals' involvement. Plaintiffs allege the hazy contours of various misdeeds from 2015 to 2020; South Pointe was the relevant defendant for more than half that five-year interval. The majority looks at the resulting fraction (above ½) and deems South Pointe significant. *See ante*, at 11–13.[*]

But I am not sure that's right. Congress did not say *time* is the basis of comparison. Rather, Congress told us to evaluate the relative significance of South Pointe's *conduct*. *See* 28 U.S.C. § 1332(d)(4)(A)(i)(II)(bb) ("whose alleged *conduct* forms a basis for the claims asserted" (emphasis added)). To evaluate the relative significance of South Pointe's conduct, we look at the complaint. *Ibid.* ("the claims asserted"). And the complaint makes clear that

---

[*] The majority also deems it relevant that Scott Carrington, a Louisiana resident, managed i3 Verticals from 2018–2020. *Ante*, at 12 & n.1. But the complaint does not explain what, other than managing i3, Carrington did wrong. And without "detailed allegations or extrinsic evidence" demonstrating the significance of Carrington's conduct relative to the other defendants, the fact that he ran the Company during the time period in question simply has no bearing on the "significant conduct" inquiry. *Opelousas Gen. Hosp. Auth. v. FairPay Sols., Inc.*, 655 F.3d 358, 363 (5th Cir. 2011).

South Pointe's conduct was far from a significant portion of plaintiffs' claims. According to the complaint, South Pointe periodically bypassed antivirus programs, failed to moderate third-party comments on a website, failed to renew an email filtering subscription, and used EU- instead of USA-licensed software. ROA.618–20 (plaintiff's Amended Petition). While that conduct may fall short of upright deportment, plaintiffs barely allege, much less show, that any of those supposed transgressions have any causal connection whatsoever to the millions of dollars in damages plaintiffs demand. *Cf. Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007) (plaintiffs should state a claim "plausible on its face" and "show" their case for relief).

So where, if not from South Pointe's misadventures, do plaintiffs' millions in claimed damages originate? Plaintiffs' complaint does contain one specific thread of facts, detailing the fallout from a cybersecurity incident that plaintiffs trace back to December 2019—*more than a year after* South Pointe had ceased business with the plaintiffs. This incident, and its remediation, forms the near-entirety of plaintiffs' demands for relief. *See* ROA.620–25. Plaintiffs' counterparty for this specific narrative, for this one thread of facts with arguable connection to plaintiff's damages, was i3 Verticals. In other words, the *conduct* underlying the claims asserted appears almost exclusively attributable to i3 Verticals—a decidedly non-local defendant. Far from being "significant," South Pointe's conduct is all but irrelevant.

And even if the complaint alleges that plaintiffs' claimed damages arise from a continuing tort, *see ante*, at 14, 15, it still fails to connect *South Pointe's* conduct to plaintiffs' injuries in any meaningful way. It is hard to see how general assertions that South Pointe's actions somehow harmed plaintiffs count as the "detailed allegations" required by our precedent to satisfy the "significant conduct" test. *See Opelousas*, 655 F.3d at 363.

No. 22-30553

*    *    *

Even if all of that is wrong, we must resolve any doubt "in favor of exercising [CAFA] jurisdiction over the case." *Opelousas*, 655 F.3d at 360 (citations omitted). With deepest respect for my learned colleagues, I think this case belongs in federal court.

I respectfully dissent.